UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONDA BALDWIN KENNEDY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS INC., et al.,<br><br>Defendants. | Case No. 23-cv-06615-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Pending before the Court is Defendant Meta Platforms Inc.'s motion to dismiss. Dkt. No. 15. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

**I.   BACKGROUND**

Pro se Plaintiff Ronda Baldwin-Kennedy and two of her political campaign entities[1] initially filed this case in the District of Nevada against Defendants Meta Platforms, Inc., Hoang Hai Mobile, and several unidentified "Doe" Defendants.[2] *See* Dkt. No. 1 ("Compl."). The parties stipulated to transfer the case here. Dkt. Nos. 18–20.

Plaintiff Baldwin-Kennedy alleges that Hoang Hai Mobile and Does 1–10 gained unauthorized access to her Facebook account, including Facebook Pages that she maintained for

---

[1] The complaint names Plaintiff Baldwin-Kennedy's campaign committees—Ronda Kennedy for Senate and Ronda Kennedy for Congress 2020—as separate plaintiffs. However, the complaint also appears to acknowledge that the Facebook and Instagram accounts at issue in this case are Plaintiff Baldwin-Kennedy's. *See* Compl. at ¶¶ 1, 16–20, 43–45, 48. The Court therefore need not consider whether certain arguments apply to some but not all Plaintiffs.
[2] As noted below, Defendant Hoang Hai Mobile has not appeared in this case and Plaintiff has not identified any of the "Doe" Defendants. Unless otherwise stated, therefore, any reference to "Defendant" in this order refers solely to Meta Platforms Inc.

her political campaign, and successfully locked her out of her own account. *See* Compl. at ¶¶ 1–2, 16–20. Plaintiff alleges that she reached out to Defendant for assistance, but it has still not helped her restore her account. *See id.* at ¶¶ 4, 21–22, 24. Plaintiff contends that Defendant, which owns the Facebook and Instagram services, is liable for the third-party breach as well as the delay in restoring access to her account. *See, e.g., id.* at ¶¶ 12, 23–44.

Additionally, Plaintiff alleges that Defendant has denied her request to "verify" her Instagram account, which still remains under her control, with a "Blue Checkmark of Verification." *See id.* at ¶¶ 45–46. As the parties appear to agree, such a "checkmark" or "badge" confirms that an account is the authentic Instagram presence for that person or brand. *See* Dkt. No. 15 at 2, & n.1. Plaintiff contends that Defendant has denied this verification for racially discriminatory reasons. Specifically, Plaintiff asserts that Defendant has engaged in election interference and violated Title II of the Civil Rights Act of 1964 by "not allowing the only Black Candidate for U.S. Senate in Nevada a blue checkmark for verification but allowing her [] white opponents to have a Blue Checkmark." *Id.* at ¶ 48. As a result, Plaintiff states that her campaign page appears less legitimate than her opponents, leading to less support and fewer donations. *Id.* at ¶ 46.

Based on these allegations, Plaintiff brings multiple causes of action. *See id.* at ¶¶ 23–55. She alleges that the loss of access to Facebook and the denial of the Instagram verification have harmed her electoral chances in her ongoing political campaign, and claim that Defendants are liable for $300,000 in connection with unspecified "injur[ies] in its business and property" and for $1 million in punitive damages. *See id.* at ¶¶ 64–72. Defendant has moved to dismiss the complaint in its entirety. Dkt. No. 15.

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

2

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**III. DISCUSSION**

   **A.   Limitation on Liability**

As an initial matter, Defendant urges that all of Plaintiff's claims and requested damages are barred by Facebook's Terms of Service and Instagram's Terms of Use. *See* Dkt. No. 15 at 9–10. Plaintiff, for her part, does not appear to deny that she agreed to the Terms of Service and Terms of Use. *See generally* Dkt. No. 23. To the contrary, Plaintiff *relies* on them for some of her causes of action. *See id.* at 8 ("Here Facebook *through its terms* created a contractual duty to take action to stop a hacking in progress once they were notified by Plaintiff of the hacking.") (emphasis added); *see also* Compl. at ¶ 28 (alleging that Defendant breached its privacy policy,

1  incorporated into the Terms of Service); *id.* at ¶ 32 ("Facebook's Terms of Service constitute a
2  binding contract."); *id.* at ¶ 51 (alleging that Plaintiff "fulfilled all requirements to receive a blue
3  checkmark" on her Instagram account). The Court finds that it may consider the Terms of Service
4  and Terms of Use as incorporated by reference in the complaint. *See United States v. Ritchie*, 342
5  F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be
6  incorporated by reference into a complaint if the plaintiff refers extensively to the document or the
7  document forms the basis of the plaintiff's claim.").

The Meta Terms of Service provide in relevant part:

> Limits on Liability
>
> Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).
>
> We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Meta Products (however caused and on any theory of liability, including negligence), even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

*See* Dkt. No. 15-2, Ex. A at § 4(3).[3] The Terms, therefore, explicitly (1) disclaim any guarantee that Facebook or Instagram will be safe, secure, or error-free, or operate without disruptions; and

---

[3] The Instagram Terms of Use similarly limit Defendant's liability. *See* Dkt. No. 15-4, Ex. C at 5. The Terms provide that Instagram "is provided 'as is,'" and Defendant "can't guarantee it will be safe and secure or will work perfectly all the time." *Id.* The Terms also disclaim all warranties and responsibility for third-party conduct, and limit liability not to exceed $100. *Id.*

4

(2) disclaim liability for third-party acts or conduct. *Id.* The Terms also cap any liability exceeding $100 arising out of or related to Facebook or the Terms of Use. *Id.*

The parties dispute whether and to what extent the Terms preclude any of Plaintiff's causes of action. *Compare* Dkt. No. 15 at 9–10, *with* Dkt. No. 23 at 13–14. Defendant, for its part, urges that Plaintiff's "hack[ing]-related claims" seek to hold Defendant responsible for third-party conduct, which is explicitly disclaimed under the Terms of Service.[4] Plaintiff, in turn, responds that she "is not holding Meta [r]esponsible for third parties," but rather is "holding Meta responsible for not taking any action or responding to Plaintiff when alerted." *See* Dkt. No. 23 at 13.

Despite Plaintiff's urging, however, it is clear that several of her causes of action are based at least in part on the alleged failure to keep her account secure and free from disruptions due to the actions of Hoang Hai Mobile and Does 1–10, and are therefore precluded by the Terms of Service and Terms of Use:

- **Negligence**. Plaintiff alleges that Defendant "had a duty to keep Plaintiff's account and pages safe." *See* Compl. at ¶ 24.
- **Computer Fraud and Abuse Act.** Plaintiff alleges that Defendant's "failure to secure Plaintiff's account from unauthorized access" violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2). *See id.* at ¶ 26.
- **Breach of Contract.** Plaintiff alleges that Defendant violated its own Terms of Service by "not adequately protecting Plaintiffs' private information" and "failing to provide a secure system." *Id.* at ¶¶ 28, 32.
- **Stored Communications Act.** Plaintiff alleges that Defendant's "fail[ure] to secure the stored communications in Plaintiff's account and failing to prevent unauthorized access to those communications, violates the Stored

---

[4] According to Defendant, such "hacking-related" claims include Plaintiff's claims for negligence, violation of the Computer Fraud and Abuse Act, breach of contract, trespass to chattels, fraud and misrepresentation, privacy violations, negligent infliction of emotional distress, and election interference." *See* Dkt. No. 15 at 9.

Communications Act, 18 U.S.C. § 2701(a)."[5] *Id.* at ¶ 29.

- **Trespass to Chattels.** Plaintiff alleges that Hoang Hai Mobile and Does 1–10 "intentionally dispossess[ed] Plaintiffs of their digital property" and "us[ed] or intermeddl[ed] with Plaintiffs' digital property." *Id.* at ¶ 35.
- **Fraud and Misrepresentation.** Plaintiff alleges that Hoang Hai Mobile and Does 1–10 "used Fraud and Misrepresentation by presenting themselves as [Plaintiff] in order to gain access to [Plaintiff's] Facebook account and SENATE page" and "by knowingly making false representations to Plaintiffs." *Id.* at ¶¶ 34, 36.
- **Privacy Violations.** Plaintiff alleges that "Doe Defendants have accessed and likely shared Plaintiff's private information making this a case of invasion of privacy." *Id.* at ¶ 38.
- **Negligent Infliction of Emotional Distress.** "Defendants' wrongful actions have caused extreme emotional distress to Plaintiff that has affected her mental and physical health." *Id.* at ¶ 41.
- **Election Interference.** Plaintiff alleges that Hoang Hai Mobile and Does 1–10 "targeted" Plaintiff's campaign page "in order to cause election interference and give [her] opponents an undue advantage." *Id.* at ¶¶ 44, 53–55.

Plaintiff offers limited argument in response, but suggests that the Terms cannot waive "certain protections." *See* Dkt. No. 23 at 14. Specifically, Plaintiff suggests that "companies have a legal duty to protect consumer's data, which can be extended to include a duty to safeguard social media accounts from unauthorized access." *See id.* In support of this broad assertion, Plaintiff offers a single out-of-circuit case, *Federal Trade Commission v. Wyndham Worldwide Corporation*, 799 F.3d 236 (3d Cir. 2015). *Id.* But this case is inapposite. Even if it were

---

[5] Although not pled as a separate cause of action but rather under the "Breach of Contract" heading, the Court construes the complaint liberally and considers this conclusory assertion as a separate cause of action. *See* Compl. at ¶ 29.

6

somehow binding on this Court (which it is not), the case only discusses the regulatory authority that the Federal Trade Commission ("FTC") has under the Federal Trade Commission Act—a statute not at issue here. *See Wyndham*, 799 F.3d at 240. In *Wyndham*, the FTC brought suit against a company for inadequate cybersecurity practices. *Id.* at 240–42. Hackers had accessed the company's computer system on three separate occasions over a two-year period. *Id.* The FTC sued the company, alleging that it had engaged in "unfair" and "deceptive" practices in violation of 15 U.S.C. § 45(a). *Id.* at 242. At least as alleged, the company had failed to use any firewalls, restrict any specific IP addresses, use any encryption for certain customer files, or require customers to change default passwords. *Id.* at 256. The court in *Wyndham* simply did not address the enforceability of any limitation of liability clause. Plaintiff has thus failed to offer any support for her suggestion that the Terms are inapplicable to her causes of action here.

The Court therefore **GRANTS** the motion to dismiss Plaintiff's causes of action to the extent they are based on the alleged failure to keep Plaintiff's account secure and free from disruptions due to Hoang Hai Mobile and Does 1–10's third-party conduct. *Accord Damner v. Facebook Inc.*, No. 20-CV-05177-JCS, 2020 WL 7862706, at *1–9 (N.D. Cal. Dec. 31, 2020) (dismissing claims based on allegations that the plaintiff's Facebook account was hacked such that he lost access and control over the account and that Facebook refused to assist him in restoring access).

### B. Failure to State a Claim

Even if the Court were to find that some alleged conduct fell outside the limitation of liability in the Terms of Service, Plaintiff has still failed to state a plausible claim against Defendant.[6]

#### i. Negligence

To state a claim for negligence, Plaintiff must allege that (i) Defendant owed a duty of care to her; (ii) Defendant breached that duty; (iii) the breach proximately caused Plaintiff injury; and

---

[6] The Terms of Service and Terms of Use both indicate, and the parties appear to agree, that California law governs the claims in this case. *See* Dkt. No. 15-2, Ex. A at § 4(4); Dkt. No. 15-4, Ex. C at 5. The Court therefore **GRANTS** the motion to dismiss Plaintiff's claim that Defendant violated Nevada public accommodations discrimination laws. *See* Compl. at ¶¶ 49–51.

(iv) Plaintiff suffered damages as a result. *See Conroy v. Regents of Univ. of California*, 45 Cal. 4th 1244, 1250 (Cal. 2009). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1095 (Cal. Ct. App. 1991).

As noted above, Plaintiff alleges that Defendant "had a duty to keep Plaintiff's account and pages safe." *See* Compl. at ¶ 24. This falls squarely within the limitation on liability in the Terms, and the Court has therefore dismissed this theory of liability. Nevertheless, Plaintiff further argues that "at the very least, [Defendant] had a duty to work with Plaintiffs to restore Plaintiffs['] Facebook account and SENATE page," and Defendant "breached that duty." *Id.* She contends that this duty to help her reclaim access to her account is found in the Terms themselves. *See* Dkt. No. 23 at 8–9. She points out that the Terms list the "services" that Defendant provide as including "promot[ing] the safety, security, and integrity of our services, combat[ing] harmful conduct and keep[ing] our community of users safe." *See id.* at 8 (citing Dkt. No. 15-2, Ex. A at § 1). The Terms also state that "[w]e work hard to maintain the security (including the availability, authenticity, integrity, and confidentiality) of our Products and services." *Id.* And based on Defendant's review of potentially violating conduct or content, Defendant "*may* take appropriate action," such as "notifying you, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement." *Id.* (emphasis added).

Critically, however, nothing in the Terms promises or guarantees that Defendant will work with a user to restore access to an account at all, let alone on a specific timeline. The Terms only state that Defendant *may* take certain actions in response to harmful conduct or violating content. Dkt. No. 15-2, Ex. A at § 4(3). And as already explained, the Terms specifically disclaim that the services "always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections." *Id.* In short, Plaintiff has not identified any provision of the Terms that imposes a duty on Defendant to assist Plaintiff in regaining access to her account.

Plaintiff also points to "principles in product liability," including "the duty to warn users of foreseeable dangers," and what Plaintiff characterizes as a "systemic duty of care." *See* Dkt. No.

8

1   23 at 10–14.  But Plaintiff's negligence claim is not based on an alleged failure to warn her of the
2   risks to her account.  *See* Compl. at ¶¶ 23–24.  Rather, it is based solely on Defendant's alleged
3   failure to restore access after Plaintiff's Facebook account was hacked.  And as the Court has
4   already explained, the Terms specifically caution users that Defendant does not guarantee that
5   Facebook will be "secure."  Dkt. No. 15-2, Ex. A at § 4(3).  It is not clear what additional warning
6   Plaintiff believes was necessary under the circumstances or how such warnings relate to her
7   negligence claim at all.  Plaintiff has not offered any legal support for her suggestion that
8   Defendant had a legal duty to restore access to her Facebook account.  The Court therefore
9   **GRANTS** the motion to dismiss Plaintiff's negligence claim.

### ii.   Computer Fraud and Abuse Act

Plaintiff alleges that Defendant "violated the Computer Fraud and Abuse Act" by failing to secure her account from "unauthorized access" and by failing to "restore access to Plaintiff." Compl. at ¶ 26.  Defendant points out that the Computer Fraud and Abuse Act ("CFAA") makes it unlawful to "intentionally access[] a computer without authorization or exceed[] authorized access."  18 U.S.C. § 1030(a)(2).  But here, Plaintiff does not allege that Defendant unlawfully accessed her Facebook account without authorization.  She only alleges that Hoang Hai Mobile and Does 1–10 unlawfully accessed her account.  Plaintiff, therefore, cannot state a claim under the CFAA.  Plaintiff does not respond to this argument at all, seeming to acknowledge that she cannot state a CFAA claim against Defendant.  The Court **GRANTS** the motion to dismiss this claim.

### iii.  Breach of Contract

Plaintiff next alleges that Defendant violated its own Terms of Service by "not adequately protecting Plaintiffs' private information" and "failing to provide a secure system."  *Id.* at ¶¶ 28, 32.  To state a claim for breach of contract, Plaintiff must allege (i) the existence of a contract; (ii) Plaintiff's performance under the contract or excuse for nonperformance; (iii) Defendant's breach; and (iv) damages to Plaintiff as a result of the breach.  *See, e.g.*, *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (Cal. Ct. App. 2014).

In her opposition, Plaintiff appears to acknowledge that the Terms do not explicitly require

9

Defendant to prevent unauthorized account access by third parties or to restore access following a breach. *See* Dkt. No. 23 at 14–16. Instead, she urges that her breach of contract claim "goes beyond the explicit language of these documents and focuses on the implicit and reasonable expectations of users." *Id.* at 14. She contends that given the nature of the services Defendant provides, a user would expect Defendant "to take reasonable steps to secure user accounts" and "to act responsibly and effectively in response to [] breaches." *See id.* at 14–15. Plaintiff appears to ask the Court to override the explicit language of the Terms of Service and Terms of Use to be consistent with a user's alleged but unwritten expectations. This is impermissible. Plaintiff offers no authority for the suggestion that a user's unilateral expectations may override or rewrite the terms of a contract, and the Court is unaware of any. The Court thus **GRANTS** the motion to dismiss the breach of contract claim. *Accord Damner*, 2020 WL 7862706, at *7 (dismissing breach of contract claim for failing to identify contractual provision requiring Facebook to safeguard user's account); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (same).

    **iv. Stored Communications Act**

To the extent that Plaintiff alleges that Defendant's failure to secure her account violated the Stored Communications Act, Compl. at ¶ 29, this claim also fails. The Stored Communications Act "has a 'narrow scope'" and "'is not a catch-all statute designed to protect the privacy of stored Internet communications.'" *Damner*, 2020 WL 7862706, at *5 (quoting *In re Google, Inc. Priv. Pol'y Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013)). Much like the Computer Fraud and Abuse Act, it only imposes liability on those who "intentionally access[]" or "intentionally exceed[] an authorization to access" stored internet communications. *See* 18 U.S.C. § 2701(a). Because Plaintiff does not allege that Defendant unlawfully accessed her Facebook account without authorization, the Court **GRANTS** the motion to dismiss this claim.

    **v. Trespass to Chattels**

Under the heading "Trespass to Chattels" Plaintiff alleges that Hoang Hai Mobile and Does 1–10 "intentionally dispossess[ed] Plaintiffs of their digital property" and "us[ed] or

10

intermeddl[ed] with Plaintiffs' digital property." Compl. at ¶ 35. To state a claim for trespass to chattels, Plaintiff must allege that Defendant (i) intentionally interfered with the possession of her personal property; and (ii) this interference proximately caused Plaintiff damage. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (Cal. 2003). In opposition, Plaintiff suggests—without any legal support—that she does not need to allege that Defendant intentionally interfered with access to her account. *See* Dkt. No. 23 at 16–18. She urges that the "claim considers the evolving understanding of personal property in the digital age." *See id.* at 16. Evolving technology, however, does not excuse Plaintiff from pleading the basic requirements of a claim. She has not done so here, and the Court **GRANTS** the motion to dismiss this claim.

### vi. Fraud and Misrepresentation

Plaintiff alleges that Hoang Hai Mobile and Does 1–10 "used Fraud and Misrepresentation by presenting themselves as [Plaintiff] in order to gain access to [Plaintiff's] Facebook account and SENATE page." Compl. at ¶¶ 34, 36. To state a claim for fraud and misrepresentation, Plaintiff must allege "(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *See Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 74 (Cal. Ct. App. 2003), *as modified on denial of reh'g* (Apr. 8, 2003). The complaint does not allege any of these elements as to Defendant. It only repeats the elements in conclusory fashion that "Defendants engaged in fraud and misrepresentation by knowingly making false representations to Plaintiffs, which Plaintiffs reasonably relied upon to their detriment." *Id.* at ¶ 36. In opposition, Plaintiff attempts to amend the complaint to include allegations that Defendant made misrepresentations about the security of its platform. *See* Dkt. No. 23 at 18–19. She asserts that "[u]sers inherently trust that platforms like Facebook will maintain a reasonable level of security to protect their accounts from unauthorized access." *Id.* at 19. But Plaintiff may not amend her complaint through arguments in her opposition brief. Moreover, as already discussed at length, the Terms explicitly state that Facebook will not necessarily be secure. Plaintiff makes no effort to explain how Defendant made any misrepresentations about the security of its services, let alone in light of the explicit language of the Terms. The Court **GRANTS** the motion to dismiss this claim.

### vii. Privacy Violations

Plaintiff alleges that "Doe Defendants have accessed and likely shared Plaintiff's private information making this a case of invasion of privacy." Compl. at ¶ 38. To the extent Plaintiff intends to assert a claim for intrusion into private matters, she must allege (i) "intrusion into a private place, conversation or matter" and (ii) "in a manner highly offensive to a reasonable person." *See Taus v. Loftus*, 40 Cal. 4th 683, 725 (Cal. 2007). But the complaint does not include any allegations regarding how Defendant invaded her privacy at all. Again, Plaintiff improperly attempts to amend her complaint in her opposition brief. Plaintiff concedes that she "do[es] not allege that [Defendant] directly intruded into private matters," but rather that its "inadequate security measures *allowed* for such intrusion by third parties." Dkt. No. 23 at 21 (emphasis added). Plaintiff appears to acknowledge that this is insufficient to state a claim for intrusion into private matters. She states that she is appealing to a "broader principle of protecting an individual's privacy rights" and "obligations that extend beyond the conventional understanding of privacy to include proactive measures in safeguarding user data against unauthorized access." *See id.* at 21–22. But even if the Court were to consider these new arguments, she offers no support for her suggestion that she can state a viable cause of action based on such broad principles. Plaintiff's causes of action must be premised on existing law and not "broad principles." The Court **GRANTS** the motion to dismiss this claim.

### viii. Negligent Infliction of Emotional Distress

In support of her negligent infliction of emotional distress claim, Plaintiff offers nothing but a conclusory statement that "Defendants' wrongful actions have caused extreme emotional distress to Plaintiff that has affected her mental and physical health." Compl. at ¶ 41. Under California law, negligent infliction of emotional distress is "not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation and damages apply." *See Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (Cal. Ct. App. 2010). As already explained, Plaintiff has failed to identify any legal duty that Defendant breached. Plaintiff's suggestion in opposition that there is an "implicit duty for digital platforms like Meta to protect users' personal data and emotional wellbeing," Dkt. No. 23 at 23–25, is completely unsupported

12

1    by any legal authority.  Like her negligence claim, her claim for negligent infliction of emotional
2    distress similarly fails.  The Court **GRANTS** the motion to dismiss this claim.

          **ix.**    **Election Interference**

Plaintiff appears to allege both a claim for "election interference" and a claim for "foreign election interference" under 22 U.S.C. § 2708(k)(4).  *See* Compl. at ¶¶ 42–46, 52–55.  She alleges that Defendant is "participating in Election interference" because it has not taken action to prevent third parties from making changes to Plaintiff's campaign page on Facebook and because it has denied her "a verification blue checkmark" on Instagram.  *See id.* at ¶¶ 43, 45–46.  Defendant points out that there is no common law claim for election interference.  *See* Dkt. No. 15 at 17.  Defendant also points out that § 2708(k)(4) does not create a private cause of action for foreign election interference.  *See id.* at 19.  Instead, it only identifies a Department of State rewards program "designed to assist in the prevention of," among other things, "foreign election interference."  *See* 22 U.S.C. § 2708(a)(2).  Plaintiff appears to implicitly acknowledge this, and instead suggests that these claims are "grounded in the broader implications of [Defendant's] actions on the democratic process and the fair conduct of elections."  *See* Dkt. No. 23 at 25–27.  She also suggests that the "spirit" of § 2708 should be extended to circumstances such as those alleged here given "the evolving nature of election interference in the digital age . . . ."  *See id.* at 30–31.  This is insufficient to state a plausible claim for relief.  Plaintiff cannot sue Defendant based on what she thinks the law *should*—but does not—say.

Plaintiff also appears to reinvent her claim entirely in opposition, stating that Defendant's conduct actually "constitute[s] discriminatory practices in violation of the Commerce Clause" and the "innkeeper rule."  *See id.* at 25–27.  Critically, this is not alleged in the complaint.  Plaintiff may not evade Defendant's motion to dismiss by entirely changing the theory of liability in opposition.  The Court **GRANTS** the motion to dismiss these claims.

          **x.**    **Title II of the Civil Rights Act of 1964**

Lastly, Plaintiff alleges that Defendant is violating Title II by "not allowing the only Black Candidate for U.S. Senate in Nevada a blue checkmark for verification but allowing her [] white opponents to have a Blue Checkmark."  Compl. at ¶ 48.  Section 2000a(a) of Title II states:  "All

persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).  Plaintiff's single, conclusory allegation that Defendant discriminated against her because of her race is clearly deficient.

Plaintiff has also offered no relevant authority supporting her contention that Facebook and Instagram are places of public accommodation for purposes of Title II.  The Ninth Circuit has explained that Title II "covers only places, lodgings, facilities and establishments." *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 756 (9th Cir. 1994).  Courts to consider the question have reasoned that as a result, Title II only applies to physical locations.  *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 957 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (rejecting argument that YouTube is a place of public accommodation under Title II); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *6 (N.D. Cal. May 9, 2019) (rejecting same argument that Facebook's online platform is a place of public accommodation); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540–45 (E.D. Va. 2003), *aff'd*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004) (rejecting argument that AOL chat rooms are places of public accommodation).  The Court finds the reasoning in these cases persuasive, and Plaintiff has offered no legal basis for distinguishing them.  Instead Plaintiff appeals to policy considerations that do not undermine these decisions and their interpretations of Title II. Plaintiff's unsupported suggestion that the meaning of public accommodation should be "re-evaluated in light of the growing important of digital platforms in public and political life," Dkt. No. 23 at 29, may be an argument for Congress, but not this Court.  The Court **GRANTS** the motion to dismiss.

### IV.     CONCLUSION

Accordingly, the Court **GRANTS** the motion to dismiss in its entirety.  Dkt. No. 15. Because Plaintiff has not stated a plausible claim for relief, she has not established that a preliminary injunction is warranted either.  *See, e.g.*, *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (requiring, *inter alia*, a likelihood of success on the merits).  The Court therefore

**DENIES** her motion for preliminary injunction.  Dkt. No. 2.

Given the nature of Plaintiff's claims, the Court is very skeptical that Plaintiff could amend her complaint to state a plausible claim for relief against Defendant.  Nevertheless, out of an abundance of caution, the Court will grant Plaintiff one opportunity to plead her best case.  Throughout Plaintiff's complaint, she suggests that she is relying on the "evolving nature" of the law.  *See, e.g.*, Dkt. No. 23 at 16, 18, 26, 28, 31.  But it is not enough for Plaintiff to argue that the law *should* hold Defendant responsible here.  It is not the Court's role to expand existing law.  Plaintiff must rely on specific, existing legal authority and must provide factual support for each of her claims.  Plaintiff shall file her amended complaint by November 25, 2024.

The Court further notes that Defendant Hoang Hai Mobile has never appeared and Plaintiff has never identified any of the additional "Doe" Defendants.  Under Federal Rule of Civil Procedure 4(m), a plaintiff must serve each defendant with a summons and complaint within ninety days of filing the complaint.  *See* Fed. R. Civ. P. 4(m).  If a plaintiff fails to do so, the Court, on its own after notice to the plaintiff, "must dismiss the action without prejudice," or order that service be made within a specified time.  *Id.*  Nearly a year after the case was filed, however, Plaintiff has not filed a proof of service as to Defendant Hoang Hai Mobile or any new "Doe" Defendants, and no one else has appeared in this case.  It is not clear whether Plaintiff intends to pursue this case against any other Defendants at all.

Accordingly, the Court **ORDERS** Plaintiff to **SHOW CAUSE** why the case should not be dismissed without prejudice as to Defendant Hoang Hai Mobile and all remaining Doe Defendants for failure to serve them as required by Rule 4(m).  Plaintiff is directed to file her response, of two pages or less, by November 15, 2024.  The Court cautions Plaintiff that this is not an opportunity to relitigate any issues related to Defendant Meta Platforms, Inc. and its motion to dismiss.

**IT IS SO ORDERED.**

Dated:   10/23/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

15